**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **ANDRÉ CURRAULT** | **CIVIL ACTION** |
| **VERSUS** | **NO. 26-01113** |
| **TROY CURRAULT, ET AL** | **SECTION: D (4)** |

**ORDER AND REASONS**

Before the Court is a Motion to Remand, filed by André Currault.[1] Defendants, Troy Currault, Nicholas Currault, LRSS Ship Service, LLC ("LRSS"), Adam Neely Davis, Adam Davis Law Firm, LLC, and Sidney Freeman, oppose the Motion.[2] After careful consideration of the parties' memoranda, the record, and the applicable law, and for the reasons expressed below, the Motion to Remand is **GRANTED** and this matter is hereby **REMANDED** to the 17th Judicial District Court for the Parish of Lafourche, State of Louisiana.

## I. FACTUAL BACKGROUND

This suit arises from a dispute regarding the $3,761,500.00 salvage award issued by this Court on June 14, 2024 to André Currault, Troy Currault, Capt. Nicholas Currault, and Sidney Freeman, and LRSS (hereafter, the "Salvage Plaintiffs") in *Currault v. American River Transportation Company, LLC*.[3] As set forth in this Court's Findings of Facts and Conclusions of Law in *Currault,* a breakaway incident occurred after Hurricane Ida made landfall in Louisiana on or

---

[1] R. Doc. 6.
[2] R. Doc. 9.
[3] *See* Civ. A. No. 23-2542, 2024 WL 2991181 (E.D. La. June 14, 2024) (Vitter, J.), *Currault v. Am. River Transp. Co., LLC*, Case No. 24-30471, 2025 WL 3516767 (5th Cir. Dec. 8, 2025).

about August 29, 2021, causing several barges in the care, custody, and control of American River Transportation Company, LLC ("ARTCO") to break free of their moorings and drift downriver.[4] Aboard the M/V SHELL FUELER, Capt. Nicholas Currault, Capt. Sidney Freeman, and André Currault worked together to use the vessel's wheel wash to guide 23 of ARTCO's barges onto the bank of the Mississippi River at the suggestion of Troy Currault.[5] Troy Currault is the father of both André Currault and Capt. Nicholas Currault.[6] Troy Currault watched for runaway barges while aboard the M/V SAINT CHARLES and acted as the "coach" of the salvage operation.[7] With the exception of Capt. Sidney Freeman, the Salvage Plaintiffs were represented at trial by Adam Neely Davis and the Adam Davis Law Firm.[8] André Currault was employed on and off for about two years as a yard helper and deckhand by LRSS,[9] an entity owned by both his brother, Capt. Nicholas Currault, and his father, Troy Currault.[10] Capt. Sidney Freeman is a dispatcher for Port Ship Service, Inc. and was represented at trial by separate counsel.[11]

In August 2022, Crescent Ship Service, Inc., its insurers, and LRSS filed three separate lawsuits for property damage in this Court against ARTCO related to damage sustained from ARTCO's breakaway barges.[12] Those cases were

[4] *Id.* at *1.
[5] *Id.* at *4.
[6] *Id.*
[7] *Id.* at *5.
[8] R. Doc. 1-1 at p. 4.
[9] *See* R. Doc. 54-5 at p. 5 in Civ. A. No. 23-2542, *Currault, et al. v. Amer. River Transp. Co., LLC,* (E.D. La.) (Deposition of Andre Currault, taken on August 9, 2023).
[10] *Currault*, Civ. A. No. 23-2542, 2024 WL 2991181 at *3.
[11] *See* Civ. A. No. 23-2542, 2024 WL 2991181.
[12] *See*, Civ. A. No. 22-2874, *Ascot Ins. Co., et al. v. Am. River Transp. Co., LLC* (E.D. La.); Civ. A. No. 22-2966, *Crescent Ship Service, Inc. v. Am. River Transp. Co., LLC, et al.* (E.D. La.); Civ. A. No. 22-2979, *Lower River Ship Service, LLC v. Am. River Transp. Co., LLC, et al.* (E.D. La.).

subsequently consolidated at the request of Crescent Ship.[13] In July 2023, the Salvage Plaintiffs filed a Verified Marine Salvage Complaint against both ARTCO, *in personam*, and 38 ARTCO barges and their cargo, *in rem*.[14] At ARTCO's request, this case was consolidated with the three property damage claims brought by Crescent Ship.[15] The property damage claims settled before trial, and the marine salvage claim was adjudicated via a three-day bench trial in April 2024.[16] Prior to trial, the Salvage Plaintiffs advised the Court, through counsel Adam Neely Davis of the Adam Davis Law Firm as well as counsel for Sidney Freeman, that it need not apportion the salvage award amongst the Salvage Plaintiffs, as they would handle the division of the $3,761,500.00 award amicably between themselves.[17]

Demonstrating that nothing tears a family apart like money, on May 8, 2026, André Currault ("Plaintiff") filed suit against his father, Troy Currault, his brother, Nicholas Currault, his father and brother's company that employed him, LRSS, the attorney who represented the family members in this matter, Adam Neely Davis and Adam Davis Law Firm, LLC, and the other Salvage Plaintiff, Sidney Freeman (collectively "Defendants") in Louisiana state court, asserting that Davis never obtained his consent to enter into an agreement for the salvage award to be divided amicably amongst the Salvage Plaintiffs.[18] Plaintiff asserts fraud claims as well as unfair trade practice claims under the Louisiana Unfair Trade Practices Act

[13] *Currault*, Civ. A. No. 23-2542, 2024 WL 2991181 at *1.
[14] *Id.*
[15] *Id.*
[16] *Id.*
[17] *Id.* at *2, n.7, referencing the Pretrial Order in 23-cv-2542, R. Doc. 24 *See also* Salvage Plaintiffs' Proposed Findings of Fact, R. Doc. 36 at p. 3.
[18] R. Doc. 1-1 at pp. 5 & 6–8.

("LUTPA") against LRSS, Troy Curault, and Nicholas Curault based upon the alleged agreement regarding division of the salvage award.[19] Plaintiff also asserts legal malpractice claims against Adam Neely Davis and the Adam Davis Law Firm under the doctrine of *respondeat superior*.[20] Finally, Plaintiff asserts a cause of action against Sidney Freeman for payment of a thing not owed under Louisiana Civil Code article 2299 and unjust enrichment under Louisiana Civil Code article 2298.[21] Plaintiff seeks damages including, but not limited to, "punitive/treble damages, attorney's fees, court costs, and legal interest from the date of demand until paid."[22] Plaintiff also requests that the $850,000 paid to Sidney Freeman from the salvage award be returned and placed in the court registry until the Court can properly apportion the salvage award amongst the original Salvage Plaintiffs.[23]

Defendants removed the matter to this Court, asserting that the Court has subject matter jurisdiction pursuant to 28 U.S.C. §1331, 28 U.S.C. §1333, and Fed. R. Civ. P. 9(h).[24] Relying on *The North Carolina*, Defendants assert that this dispute is one of salvage compensation and therefore may only be adjudicated by an admiralty court of the United States.[25]

In the instant Motion to Remand, Plaintiff asserts that the Court lacks federal question jurisdiction because he asserted state law claims under Louisiana law.[26]

[19] *Id.* at pp. 6–7.
[20] *Id.* at p. 8
[21] *Id.*
[22] *Id.* at p. 9.
[23] *Id.*
[24] R. Doc. 1.
[25] R. Doc. 1 at p. 5 (citing *The North Carolina,* 40 U.S. 40, 10 L.Ed. 653 (1841)).
[26] R. Doc. 6-1 at p. 5.

Plaintiff argues that his claims are not based in admiralty because the salvage action has already been properly adjudicated.[27] In addition, Plaintiff asserts that his claims, while resulting from conduct that occurred during and following the Court's salvage determination, are against a different set of defendants.[28] For these reasons, Plaintiff argues that his claims are not subject to the Court's admiralty jurisdiction under 28 U.S.C. § 1333.[29]

Plaintiff further asserts that this case is distinguishable from *The North Carolina* because that case proceeded *in rem* based upon a salvage lien that had yet to be extinguished by payment of the salvage award,[30] and Plaintiff asserts only *in personam* claims since "the salvage questions have been adjudicated" and paid.[31] Thus, Plaintiff contends that the salvage lien has been satisfied and the Court's admiralty jurisdiction closed.[32] Plaintiff urges the Court to rely on *Madruga v. Superior Court of California in and for San Diego County*[33] to determine the appropriate forum for Plaintiff's *in personam* claims.[34] Plaintiff relies on *Madruga* to assert that the Court's admiralty jurisdiction is exclusive only when proceedings are *in rem* "where a vessel or thing is itself treated as the offender and made the defendant by name or description in order to enforce a lien."[35] To the extent that any

[27] *Id.*
[28] Including his family. *Id.*; *See Currault v. Am. River Transp. Co., LLC*, No. 23-2542, 2024 WL 2991181 (E.D. La. June 14 2024).
[29] R. Doc. 6-1 at p. 5.
[30] R. Doc. 6-1 at pp. 6–7 (citing *The North Carolina*, 40 U.S. 40, 48, 10 L.Ed. 653 (1841)).
[31] R. Doc. 6-1 at p. 7; *See Currault v. Am. River Transp. Co., L.L.C.*, No. 24-30471, 2025 WL 3516767 (5th Cir. Dec. 8 2025).
[32] R. Doc. 6-1 at pp. 7–8.
[33] 346 U.S. 556, 74 S.Ct. 298, 98 L.Ed.290 (1954).
[34] R. Doc. 6-1 at p. 8.
[35] *Id.* (quoting *Madruga*, 346 U.S. 556, 74 S.Ct. 298) (citation modified).

maritime character remains in the instant suit that might grant the Court admiralty jurisdiction, Plaintiff submits that his claims "remain in personam claims because Plaintiff seeks personal relief against named individuals and entities, not relief against a vessel or cargo."[36] Plaintiff contends that the "saving-to-suitors" clause of 28 U.S.C. § 1333 preserves state court jurisdiction over in personam maritime claims, and that Fifth Circuit precedent prevents removal of such claims without an independent basis for removal, such as diversity jurisdiction.[37] Plaintiff contends that no such independent basis for removal exists.[38]

In response, Defendants assert that the Court has subject matter jurisdiction over Plaintiff's claims because they arise under federal law, as Plaintiff seeks a determination of the proper distribution of the global salvage award issued by this Court among the parties.[39] Defendants contend that Plaintiff's causes of action stem from a federal right to a salvage award and that resolution of those claims must be made by an application of federal law, namely the Salvage Convention.[40] Alternatively, Defendants assert that the Court has federal question jurisdiction over Plaintiff's state law claims because they satisfy the four factors set forth in *Grable & Sons Metal Products, Inc. v. Darue Engineering and Manufacturing*, as a federal issue is necessarily raised, actually disputed, substantial, and capable of resolution in federal court without disturbing any congressionally approved balance of federal and

[36] R. Doc. 6-1 at p. 8.
[37] *Id.* at pp. 8–9 (citing *Barker v. Hercules Offshore, Inc.*, 713 F.3d 208, 219 (5th Cir. 2013)).
[38] R. Doc. 6-1 at p. 9.
[39] R. Doc. 9 at pp. 1 & 4–5.
[40] *Id.* at pp. 5–7.

state judicial responsibilities.[41] Defendants contend that Plaintiff's claims contain an embedded federal issue as they "do not exist but for the Salvage Award, the claim[s] [are] disputed because the parties cannot agree on an apportionment of the Salvage Award among themselves, and that determination involves a substantial federal issue because it requires the application of a Treaty (*i.e.*, the Salvage Convention)."[42] Defendants further assert that the Court has admiralty jurisdiction over Plaintiff's claims, and that removal was proper under the saving to suitors clause, 28 U.S.C. § 1333(1), because the Court has federal question jurisdiction over the claims.[43]

## II. LEGAL STANDARD

Federal courts are courts of limited jurisdiction.[44] A defendant may remove "any civil action brought in a State court of which the district courts of the United States have original jurisdiction."[45] "The removing party bears the burden of proving that federal jurisdiction exists and that removal was proper."[46] The removal statute is strictly construed and any doubt as to the propriety of removal should be resolved in favor of remand.[47] Remand is proper if at any time the court lacks subject matter jurisdiction.[48]

---

[41] *Id.* at pp. 4–5 & 7 (citing *Grable & Sons*, 545 U.S. 308, 312–14, 125 S.Ct. 2363, 162 L.Ed.2d 257 (2005)).
[42] R. Doc. 9 at p. 7.
[43] *Id.* at pp. 8–10.
[44] *Perez v. McCreary, Veselka, Bragg & Allen, P.C.*, 45 F.4th 816, 821 (5th Cir. 2022).
[45] 28 U.S.C. § 1441(a).
[46] *Manguno v. Prudential Property and Cas. Ins. Co.,* 276 F.3d 720, 723 (5th Cir. 2002) (citations omitted).
[47] *Gasch v. Hartford Acc. & Indem. Co.*, 491 F.3d 278, 281–82 (5th Cir. 2007) (citation modified).
[48] *See* 28 U.S.C. § 1447(c).

Federal district courts have original jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States."[49] A party seeking to establish federal question jurisdiction over a state law claim with an embedded federal issue must satisfy the four-part test laid out in *Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing*.[50] As explained by the Fifth Circuit, "*Grable* applies if: (1) resolving a federal issue is necessary to resolution of the state-law claim; (2) the federal issue is actually disputed; (3) the federal issue is substantial; and (4) federal jurisdiction will not disturb the balance of federal and state judicial responsibilities."[51] According to the Fifth Circuit, "[t]hese conditions are difficult to meet," and, "[l]ike most federal question doctrines, *Grable* is applied in the shadow of the well-pleaded complaint rule."[52] Thus, courts look "to the face of a plaintiff's well-pleaded complaint to determine whether the issues it raises implicate *Grable*."[53] The Fifth Circuit explained that, "[t]he category of cases that satisfy these requirements is special and small," as, "[t]he type of claim that creates a federal question under *Grable* is typically a state-law claim premised on some component of federal law."[54] "Furthermore, although the parties may ultimately litigate a federal issue in their case, that fact does not show that the suit, that is, the

[49] 28 U.S.C. § 1331.
[50] *Mitchell v. Advanced HCS, LLC,* 28 F.4th 580, 588 (5th Cir. 2022) (citing *Grable & Sons,* 545 U.S. 308, 314, 125 S.Ct. 2363, 162 L.Ed.2d 257 (2005)).
[51] *Mitchell*, 28 F.4th at 588 (quoting *The Lamar Co., LLC v. Miss. Transp. Comm'n*, 976 F.3d 524, 529 (5th Cir. 2020)) (citation modified).
[52] *Mitchell*, 28 F.4th at 588 (quoting *Lamar*, 976 F.3d at 529) (citation modified).
[53] *Mitchell,* 28 F.4th at 588 (citing *Lamar*, 976 F.3d at 529).
[54] *Mitchell*, 28 F.4th at 588 (quoting *Bd. of Comm'rs of Se. La. Flood Prot. Auth.-E. v. Tenn. Gas Pipeline Co.*, 850 F.3d 714, 721 (5th Cir. 20174)) (citation modified).

plaintiff's original cause of action, arises under the Constitution or the laws of the United States."[55]

Pursuant to 28 U.S.C. § 1333(1), also known as the saving to suitors clause, federal district courts also "have original jurisdiction, exclusive of the courts of the States, of: (1) Any civil case of admiralty or maritime jurisdiction, saving to suitors in all cases all other remedies to which they are otherwise entitled."[56] "[A] party seeking to invoke federal admiralty jurisdiction pursuant to 28 U.S.C. § 1333(1) over a tort claim must satisfy conditions both of location and of connection with maritime activity."[57] The locality test assesses "whether the tort occurred on navigable water or whether injury suffered on land was caused by a vessel on navigable water."[58] This test requires the Court to first determine whether the dispute "has a potentially disruptive impact on maritime commerce," and then determine "whether the general character of the activity giving rise to the incident shows a substantial relationship to traditional maritime activity."[59]

With respect to removal, the Fifth Circuit in *Barker v. Hercules Offshore, Inc.* recognized that the saving to suitors clause "does not guarantee plaintiffs a nonfederal *forum*, or limit the right of defendants to remove such actions to federal

[55] *Venable v. La Workers' Comp. Corp.*, 740 F.3d 937, 942–43 (5th Cir. 2013).
[56] 28 U.S.C. § 1333(1) (capitalization in original).
[57] *Venable*, 740 F.3d at 944 (quoting *Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527, 534, 115 S.Ct. 1043, 130 L.Ed.2d 1024 (1995)) (citation modified).
[58] *Venable*, 740 F.3d at 944 (quoting *Jerome B. Grubart, Inc.*, 513 U.S. at 534, 115 S.Ct. 1043) (citation modified).
[59] *Venable*, 740 F.3d at 944 (quoting *Jerome B. Grubart, Inc.*, 513 U.S. at 534, 115 S.Ct. 1043) (citation modified).

court where there exists some basis for federal jurisdiction other than admiralty."[60] "Instead, removal of maritime cases is permissible as long as there is an independent basis for federal jurisdiction."[61] While the Fifth Circuit subsequently stated that, "whether the saving-to-suitors clause of the federal maritime statute prohibits removal of general maritime claims absent an independent basis for federal jurisdiction in light of Congress's December 2011 amendment to the federal removal statute—is not clear,"[62] it nonetheless recognized that, "[t]he vast majority of district courts considering this question have maintained that such lawsuits are not removable."[63] Despite acknowledging the lack of clarity on this issue, the Fifth Circuit has not offered any further guidance or indicated that *Barker* is no longer good law.[64]

[60] 713 F.3d 208, 220 (5th Cir. 2013) (quoting *Tenn. Gas Pipeline v. Hous. Cas. Ins.*, 87 F.3d 150, 153 (5th Cir. 1996)) (citation modified) (emphasis in original).

[61] *Barker*, 713 F.3d at 220.

[62] *Sangha v. Navig8 ShipManagement Private Limited*, 882 F.3d 96, 100 (5th Cir. 2018).

[63] *Id.* at 100 (citing authority).

[64] *See In re N&W Marine Towing, LLC,* 90 F.4th 724, 733 (5th Cir. 2024) (en banc) ("N&W seizes on this statement to posit that even if a plaintiff invokes the saving to suitors clause in a state court action, that does not prevent removal of the action to federal court under admiralty jurisdiction. Whatever the removability of a state action brought pursuant [to] the saving to suitors clause, a question we need not answer in today's case, N&W's argument runs aground because N&W offers no authority for a district court's maintaining claims in federal court against an improperly joined party, despite improper joinder."); *Sangha*, 882 F.3d at 100–101 (commenting that, "[h]owever, because there is no binding precedent from this circuit, there remains a consequential number of district courts that have held to the contrary. This disagreement, lopsided as it might be, highlights the conceptual difficulty of and uncertainty surrounding the issue. Accordingly, we hold that the district court did not abuse its discretion in resolving the issue of personal jurisdiction before establishing whether subject-matter jurisdiction existed.").

## III. ANALYSIS

### A. Federal Question Jurisdiction, 28 U.S.C. § 1331

In their Notice of Removal, Defendants assert that the Court has subject matter jurisdiction over Plaintiff's claims under 28 U.S.C. § 1331.[65] In their Opposition brief to Plaintiff's Motion to Remand, Defendants contend that the Court has federal question jurisdiction over Plaintiff's state law claims because Plaintiff seeks a determination of the proper distribution of the Salvage Award issued by this Court, which is governed by the Salvage Convention. In *Grable & Sons Metal Products, Inc. v. Darue Engineering and Manufacturing*, the Supreme Court held that a state law claim does not "arise under" federal law simply because a state court must interpret some aspect of federal law in reaching its decision.[66] The Supreme Court in *Romero v. International Terminal Operating Co.* likewise cautioned against the "infusion of general maritime jurisdiction into the 'federal question' grant."[67] As recognized by Defendants, under *Grable & Sons*, this Court can exercise federal question jurisdiction under limited circumstances when "(1) resolving a federal issue is necessary to resolution of the state-law claim; (2) the federal issue is actually disputed; (3) the federal issue is substantial; and (4) federal jurisdiction will not disturb the balance of federal and state judicial responsibilities."[68]

---

[65] R. Doc. 1 at ¶ 12.
[66] *Grable & Sons Metal Prods. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 313, 125 S.Ct. 2363, 162 L.Ed.2d 257 (2005).
[67] 358 U.S. 354, 375 (1959), *superseded on other grounds by statute as stated in Miles v. Apex Marine Corp.*, 498 U.S. 19, 111 S.Ct. 317, 112 L.Ed.2d 275 (1990).
[68] *Singh v. Duane Morris, LLP*, 538 F.3d 334, 338 (5th Cir. 2008) (citing *Grable*, 545 U.S. at 314, 125 S.Ct. 2363).

The Court finds that Defendants have not met *Grable*'s requirements to establish federal question jurisdiction. The Court first turns to Plaintiff's state court Petition for Damages. Plaintiff has asserted the following causes of action in his Petition: (1) fraud and violation of the Louisiana Unfair Trade Practices Act, La. R.S. 51:1401, *et seq.*, against Troy and Nicholas CurRault; (2) legal malpractice against Adam Neely Davis and Adam Davis Law Firm; and (3) payment of a thing not owed under Louisiana Civil Code article 2299 against Sidney Freeman.[69] While Defendants assert that Plaintiff's state law claims, "necessarily hinge on the resolution of a disputed and substantial federal issue in the first instance, namely the application [of] the International Convention of Salvage, 1989,"[70] the Court disagrees.

Plaintiff's state law claims are all based upon an alleged false representation made to this Court by counsel for Troy Curault, Capt. Nicholas Curault, Sidney Freeman, and LRSS that, "Salvage Plaintiffs have agreed to resolve the division of their salvage award amicably between themselves such that this Honorable Court will not need to adjudicate that issue at trial."[71] Plaintiff asserts in his Petition that, "at no point in time did defendant, Adam Neely Davis, obtain Petitioner's consent to enter such an agreement for the award to be divided amicably amongst his clients,"[72] and that, "LRSS, Tory [sic] Curault, and Nicholas Curault have continually refused to tender any funds to Petitioner. From their actions and inactions, it is clear that

[69] R. Doc. 1-1 at pp. 6–9.
[70] R. Doc. 9 at p. 2.
[71] R. Doc. 24 at p. 41. *See* R. Doc. 43 at p. 2, n.7 (*citing* R. Docs. 24 & 25).
[72] R. Doc. 1-1 at ¶ 9.

LRSS, Troy Currault and Nicholas Currault never intended to amicably resolve the division of the salvage award with Petitioner and intentionally misled the Court."[73] In his request for relief in the Petition, Plaintiff asks the state court to order "the return of the sum of $850,000 previously received by [Sidney Freeman], to be placed into the registry of the Court until this Court can determination [sic] proper distribution of the global salvage award."[74]

Although Defendants hint at this in their Opposition brief,[75] Article 15 of the Salvage Convention states that, "[t]he apportionment of a reward under article 13 between salvors shall be made on the basis of the criteria contained in that article."[76] The Court points out that the Salvage Award at issue in this case was issued pursuant to Article 13 of the Salvage Convention.[77] Thus, the ten factors set forth in Article 13 of the Salvage Convention, which the Court considered in determining the amount of the Salvage Award, are applicable to determine the division of the Salvage Award between the salvors in this case. However, a determination regarding the proper apportionment of the Salvage Award between the salvors is putting the proverbial cart before the horse. Such a determination will not be required unless and until there is a determination in Plaintiff's favor on the state law claims asserted in his Petition, namely his claims for fraud, LUTPA violations, and payment of a thing not owed under La. Civ. Code art. 2299, *et seq*. As the Fifth Circuit explained,

---

[73] *Id*. at ¶ 16.
[74] *Id*. at p. 9.
[75] *See* R. Doc. at pp. 5–7.
[76] International Convention on Salvage, April 28, 1989, S. Treaty Doc. No. 102-12, 1953 U.N.T.S. 193 (hereafter, "Salvage Convention").
[77] *See Currault v. Am. River Transp. Co., LLC*, Civ. A. No. 23-2542, 2024 WL 2991181 (June 14, 2024).

"although the parties may ultimately litigate a federal issue in their case, that fact does not show that the suit, that is, the plaintiff's original cause of action, arises under the Constitution or the laws of the United States."[78] Because Defendants have failed to show that resolution of a federal issue is necessary to resolve Plaintiff's state law claims, Defendants have failed to show that the Court has federal question jurisdiction over Plaintiff's claims under *Grable*.

**B. Federal Admiralty Jurisdiction, 28 U.S.C. § 1333(1)**

Defendants also assert in their Notice of Removal that the Court has subject matter jurisdiction over Plaintiff's claims based upon federal admiralty jurisdiction, 28 U.S.C. § 1333.[79] Although Defendants do not cite § 1333 in their Opposition brief, they contend that Plaintiff's marine salvage claims fall within the Court's admiralty jurisdiction and that removal was proper under the saving to suitors clause because the Court has federal question jurisdiction over Plaintiff's claims.[80] Defendants argue that Plaintiff's lawsuit "seeks, above all, a determination of each salvors' claim to the global Salvage Award. That determination is to be made pursuant to federal law, including the Salvage Convention."[81]

As previously discussed, the Fifth Circuit has held that the saving to suitors clause in § 1333(1) "does not guarantee plaintiffs a nonfederal *forum,* or limit the right of defendants to remove such actions to federal court where there exists some

[78] *Venable v. La Workers' Comp. Corp.*, 740 F.3d 937, 942–43 (5th Cir. 2013).
[79] R. Doc. 1 at ¶ 12.
[80] R. Doc. 9 at pp. 8–10.
[81] *Id*. at p. 10.

basis for federal jurisdiction other than admiralty."[82] Here, Defendants assert that removal is proper under § 1333(1), the saving to suitors clause, because the Court has federal question jurisdiction over Plaintiff's claims. The Court, however, has determined that Plaintiff's claims do not fall within the Court's federal question jurisdiction. Defendants have failed to demonstrate any other basis for federal jurisdiction to support removal of Plaintiff's claims that were brought in state court pursuant to the saving to suitors clause. Accordingly, Defendants have failed to show that removal was proper under § 1333(1).[83]

## IV. CONCLUSION

For the reasons set forth above,

**IT IS HEREBY ORDERED** that the Motion to Remand[84] is **GRANTED.** This matter is hereby **REMANDED** to the 17th Judicial District Court for the Parish of Lafourche, State of Louisiana, for lack of subject matter jurisdiction.[85]

New Orleans, Louisiana, September 11, 2026.

**WENDY B. VITTER**
**United States District Judge**

[82] *In re N&W Marine Towing, LLC*, 90 F.4th 724, 733 (5th Cir. 2024) (quoting *Barker v. Hercules Offshore, Inc.*, 713 F.3d 208, 220 (5th Cir. 2013)) (citation modified).

[83] The Court notes that the Fifth Circuit has also held that, "A party seeking to invoke federal admiralty jurisdiction pursuant to 28 U.S.C. § 1333(1) over a tort claim must satisfy conditions both of location and of connection with maritime activity." *Venable v. La. Workers' Comp. Corp.*, 740 F.3d 937, 944 (5th Cir. 2013) (quoting *Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527, 534, 115 S.Ct. 1043, 130 L.Ed.2d 1024 (1995)) (citation modified). Defendants, however, did not argue in their Opposition brief that the Court has admiralty jurisdiction over Plaintiff's claims on this basis. *See, generally,* R. Doc. 9.

[84] R. Doc. 6.

[85] Should the parties be unable to see that family is real wealth, and no amount of money can replace the bonds of loved ones, then the very able judges of the 17th Judicial District Court for the Parish of Lafourche are well-equipped to resolve this matter.